IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARTHURE ORTEGA,

    Plaintiff,

v.                                              CV 11-0551 LH/WPL

J. LOPEZ and
D. HOISINGTON,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Arthure Ortega brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that he was subject to unconstitutional conditions while incarcerated at Western New Mexico Correctional Facility ("WNMCF"). (Doc. 1.) James Lopez, former Deputy Warden at WNMCF, and Deanna Hoisington, Deputy Warden at WNMCF, have filed a *Martinez* report (Doc. 24), which I will construe as a motion for summary judgment. Ortega did not file objections to the report. This case was referred to me to render proposed findings and a recommended disposition. (Doc. 26.) Having carefully reviewed the pleadings and the relevant law, I find that Ortega has failed to exhaust his administrative remedies and recommend that the Court grant summary judgment for Defendants and dismiss Ortega's claims with prejudice.

### FACTUAL & PROCEDURAL BACKGROUND

Ortega was an inmate at WNMCF from October 2009 until October 2011, with a brief stay at the Central New Mexico Correctional Facility from January 18, 2011 to March 15, 2011. (Doc. 24 at 2; Doc. 2 Ex. A at 1.) Beginning in November 2010, Ortega experienced vision loss in his right eye. (Doc. 1 at 3.) He allegedly reported his condition to corrections officers and

nurses daily for two months. (*Id.*) Ortega claims that a nurse explained that he was denied treatment because security refused to clear "level four" inmates to receive medical attention unless it was a "life or death" situation. (*Id.*) By January 3, 2011, he suffered from headaches, loss of sleep, and "extremely bad" vision loss in his right eye. (*Id.*) On January 10, 2011, D. Deming, M.D., treated Ortega and diagnosed him with a detached retina. (*Id.*; Doc. 24 at 5.) Allegedly, Dr. Deming informed Ortega that, had he been seen sooner, his torn retina would not have developed into a detached retina. (Doc. 1 at 3.) Ortega's retina was surgically re-attached on January 18, 2011 (Doc. 24 Ex. D at 9), and he received follow-up care for his eyes in April, July, and September 2011 (*id.* at 8-13). Ortega claims that he is legally blind in his right eye as a result of his detached retina. (Doc. 1 at 4.)

On June 12, 2011, Ortega filed this lawsuit in federal court alleging violations of his Eighth Amendment rights. (Doc. 1.) On January 4, 2012, the Court dismissed three Defendants for failure to state a claim and ordered the remaining Defendants, Lopez and Hoisington, to answer Ortega's complaint. (Doc. 14.) Defendants filed an answer on March 5, 2012. (Doc. 18.) Based on the pleadings, I ordered Defendants to prepare a *Martinez* report addressing Ortega's claims. (Doc. 19.) After a brief stay of proceedings due to Ortega's failure to update his address (Docs. 21, 22 & 23), Defendants filed their *Martinez* report (Doc. 24). The Court ordered Ortega to respond to the report by May 23, 2012 (Doc. 23), but Ortega never filed a response or objections. Accordingly, Defendants did not file a reply.

## STANDARD OF REVIEW

The court should grant summary judgment only when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c)(2). For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). A *Martinez* report is also treated as an affidavit and will be construed as a motion for summary judgment. *See id* at 1109-13; *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). A court cannot resolve material disputed factual issues by accepting a *Martinez* report's factual findings when they are in conflict with pleadings or affidavits. *Id.* at 1109. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).

Because Ortega proceeds *pro se*, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## ANALYSIS

Before bringing a lawsuit regarding conditions of confinement, an inmate must exhaust all administrative remedies that are available within the facility. *See* 42 U.S.C. 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhausting administrative remedies means that the prisoner completes the grievance process, including pursuing all available administrative appeals, unless all available relief is obtained earlier in the process. *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). A remedy is "available" if it is "capable of use for the accomplishment of a purpose." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Booth v. Churner,* 532 U.S. 731, 737 (2001)).

This requirement serves several purposes. First, it enables prison officials to resolve the complaint without the need for court intervention. *Ross*, 365 F.3d at 1184. Next, it filters out some frivolous claims. *Id.* Finally, it creates an administrative record that aids in the court's review of the case before it. *Id.* However, the benefits of the grievance process can only be realized "if the prison grievance system is given a fair opportunity to consider the grievance." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2006)). For that reason, inmates must complete the entire review process in accordance with the rules that are defined by the prison grievance process itself. *Id.* (quoting *Jones v. Bock,* 549 U.S. 199, 218 (2007)).

Failure to exhaust administrative remedies is an affirmative defense and not a pleading requirement. *Jones,* 549 U.S. at 212. Consequently, Defendants bear the burden of proving that Ortega did not utilize the available administrative remedies. *See Tuckel*, 660 F.3d at 1254. Once Defendants satisfy their burden, though, the onus falls to Ortega to specifically show that either

he exhausted his administrative remedies or administrative remedies were unavailable for each alleged violation. *See id.*

Here, Defendants assert failure to exhaust as a defense to Ortega's claims. (Doc. 18 at 4; Doc. 24 at 5.) WNMCF has a grievance policy in place. (Doc. 24 Ex. C). The policy allows an aggrieved inmate to seek formal review of complaints related to his or her confinement. (Doc. 24 Ex. C at 2.) Each inmate receives either a written copy or an oral summary of the policy during orientation. (Doc. 24 Ex. C at 4.) In order to grieve an issue, an inmate must first file an informal complaint using the Informal Complaint Form within five calendar days of the incident. (*Id.* at 11.) If the informal effort fails to resolve the complaint within five working days, the inmate must then file an Inmate Grievance Form within twenty calendar days of the incident. (*Id.*) The inmate must place the completed form in a designated Grievance Box or an institutional mail box, or the inmate may deliver the form to a designated Grievance Officer. (*Id.*) For Level IV institutions, there is a Grievance Mailbox located inside the general population area. (*Id.* at 5.) The Grievance Officer checks the Grievance Box daily, except for weekends and holidays (*id.* at 6), and reviews the grievances and submits a report to the Warden within twenty working days of receipt (*id.* at 12). The Warden reviews the report and informs the inmate, in writing, of the decision within fifteen days of receiving the Grievance Officer's report. (*Id.* at 13.) The inmate may appeal the Warden's decision to the Office of the Secretary of Corrections within seven calendar days of receiving the decision. (*Id.*) The decision of the Secretary is the final decision. (*Id.*) The Grievance Officer must keep records of all grievances filed by the inmates and their disposition. (*Id.* at 14.)

Attached to Defendants' *Martinez* report is an affidavit from Ralph Casaus, Adult Prisons Divisions Corrections Administrator/Grievance Appeals Coordinator. (Doc. 24 Ex. B.) Casaus attests that Ortega did not file any grievances regarding his medical care, nor did he file a single grievance in the years 2009, 2010, and 2011. (Doc. 24 Ex. B). Based on the absence of any grievance relating to his medical care, Defendants argue that Ortega has failed to exhaust his administrative remedies on the issues alleged in his complaint. (Doc. 24 at 6.)

Since Ortega did not file a response, I turn to his complaint to see if he alleges that he filed any grievances regarding his medical care. However, he only claims that he regularly reported his pain to nurses and corrections officers. (Doc. 1 at 3.) WNMCF's Grievance Policy clearly requires the use of written forms that the inmate must mail, place in a specified Grievance Box, or hand-deliver to a Grievance Officer. His allegations that he reported pain to nurses and corrections officers do not indicate that he ever availed himself to the grievance system. Further, Ortega makes no allegations regarding appeals or contacting the Secretary of Corrections regarding his concerns. Accordingly, I find that Defendants have proven that he did not exhaust his administrative remedies. Moreover, since an Informal Complaint must be filed within five days of the incident, and Ortega's allegations relate to an absence of medical treatment between November 2010 and January 2011 (Doc. 1 at 3), the deadline for filing such grievances has passed, rendering all issues raised by Ortega non-grievable. *See Fitzgerald*, 403 F.3d at 1140 (10th Cir. 2005) (holding that where the time frame for recourse to administrative remedies has expired, thereby barring the inmate from pursuing them, the dismissal should be with prejudice).

6

## Conclusion

Ortega failed to file a single grievance regarding his medical care prior to commencing this lawsuit. Therefore, I recommend that the Court grant summary judgment for Defendants. Further, since the deadline for filing grievances regarding his medical care has long since passed, I recommend that the Court dismiss Ortega's complaint (Doc. 1) with prejudice.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ William P. Lynch*
William P. Lynch
United States Magistrate Judge